UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS PORTER,

        Movant,

v.

UNITED STATES OF AMERICA,

        Respondent.

_____/

Criminal Case No. 10-20075-1
Civil Case No. 14-11410

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW


**ORDER GRANTING MOVANT'S MOTION FOR EXTENSION OF TIME TO REPLY [151]; DENYING MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [139]; AND DENYING CERTIFICATE OF APPEALABILITY**


On September 27, 2010, Movant pleaded guilty to a charge of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. On January 28, 2011, this Court sentenced Movant to 210 months (17.5 years) of imprisonment and five years of supervised release.[1] Movant appealed his conviction and sentence, which the Sixth Circuit affirmed on January 7, 2013.

_____

[1] On September 21, 2015, the Court issued an Order [161] reducing Movant's term of imprisonment from 210 months to 168 months (14 years) to reflect a retroactive reduction in the applicable sentencing guidelines.

On April 7, 2014, Movant filed the instant Motion to Vacate, Set Aside, or Correct Sentence [139]. On November 10, 2014, the Court issued an Order [143] directing the government to respond to Movant's motion by December 15, 2014. The government filed its Response [149] on December 9, 2014. On December 29, 2014, Movant filed a Motion for Extension of Time to Reply [151]. On January 26, 2015, Movant filed his Reply [152]. The Court accepts the Reply as timely; Movant's Motion for Extension of Time to Reply [151] is **GRANTED**.

For the reasons stated below, Movant's Motion to Vacate, Set Aside, or Correct Sentence [139] is **DENIED**. Movant is **DENIED** a certificate of appealability.

## FACTUAL BACKGROUND

On appeal from Movant's conviction, the Sixth Circuit summarized the background of this case, in part, as follows:

> The investigation in this case began in January 2010, when a confidential informant, "Nop," told ATF Agent Joseph Nether about an armed home-invasion crew. Nop introduced Nether, working undercover and posing as a drug courier for a large narcotics organization, to Porter, a member of the group with whom Nop had previously committed these armed robberies. On January 19, 2010, Nether told Porter that he wanted the Mexican cartel for which he worked to be "hit" because it paid him too little for his courier services and refused to compensate him properly for the dangerousness of his job. Nether mentioned that a typical shipment would include more than thirty kilograms of cocaine and that there were always at least two armed people guarding the drug house. When

Nether asked if Porter would be interested in the job, Porter responded, "That's what we do. That's what we do. We do it all the time." Nether explained to Porter that the cartel used a different house for each delivery and that once he learned the location of the stash house, the crew would have to rob it within a couple of hours, before the cocaine was sent out with couriers.

On January 28, 2010, Nop telephoned Porter and arranged for Nop, Porter, and Nether to meet at a local restaurant to discuss the robbery plans. Nether told Porter that he anticipated the arrival of thirty to forty kilograms of cocaine around February 1. On February 1, Nop called Porter to let him know that the robbery would occur the next day and to arrange a meeting of the crew at the restaurant on the day of the robbery. Porter told Nop that he would bring McGee and another individual, later revealed to be Howard Barkley, as part of the crew.

When Nether arrived at the restaurant, Porter, McGee, and Nop were already there. They reviewed the plans for the robbery. McGee told Nether, "I'm following lead baby, I'm wit ya'll, whatever ya'll, I'm rollin." Later, the last member of the team, Barkley, arrived at the meeting. McGee had recruited Barkley to participate in the robbery as the driver. Porter then dismissed the crew with instructions to retrieve the guns that they would carry for the robbery and reconvene at a local liquor store. Barkley went with McGee to McGee's house, where McGee retrieved an assault rifle. The crew members reassembled at the liquor store and continued on to the storage facility where Nether indicated the robbery would take place. Nop, Nether, Porter, and Barkley all entered through the gate, but McGee did not follow. He claimed that the gate had closed too quickly, so Nether gave him the gate code over the telephone. At that point, officers announced themselves and arrested Porter, Nop, and Barkley. McGee escaped, but was later arrested.

After the arrests, officers received information that there were firearms at Porter's mother's residence. Upon a search of her home, officers discovered a Ruger Mini–14 .223 caliber rifle, a 12–gauge Mossberg shotgun, a 20–gauge Springfield shotgun, and a .40 caliber HMK handgun. Two of the firearms had recently been stolen from McGee's neighbor in a home invasion that McGee had arranged for Porter and other crew members to commit.

. . .

During an interview, ATF Agent Jerrod A. Marsh told Porter that agents had found guns and drugs at Porter's mother's house and that Porter's mother could be arrested if Porter did not confess. Subsequent to that statement, Porter waived his Miranda rights and confessed. Porter moved to suppress his statement on the basis that it was involuntary, but the district court denied the motion. Porter later pled guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The district court sentenced Porter to 210 months of imprisonment and five years of supervised release, applying the sentencing enhancements in U.S.S.G. § 2D1.1(b)(1) and U.S.S.G. § 2D1.1(c)(3).

*United States v. McGee*, 510 F. App'x 377, 379–80 (6th Cir. 2013).

## ANALYSIS

To succeed on a motion to vacate, set aside, or correct sentence, a movant must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). Movant alleges a violation of his constitutional right to the effective assistance of counsel, an "error of constitutional magnitude." *See id.* Movant's discussion of certain issues is not clearly tied to his ineffective assistance of counsel claim. In its Response, the government argues that Movant is barred from relitigating these issues because they were already ruled on by the Sixth Circuit on

4

direct appeal.  In his Reply, Movant asks the Court to view all issues raised in his motion as though they were raised under his ineffective assistance of counsel claim.  The Court will do so.

To establish ineffective assistance of counsel, Movant must show that his counsel rendered deficient performance and thereby prejudiced Movant's defense so as to render the outcome of the proceedings unreliable.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Movant identifies many alleged deficiencies in his counsel's performance.  The Court will address them in turn.

## I. Failure to challenge search of mother's residence on the grounds   that her consent was induced by a false search warrant

Movant faults his counsel for failing to move to suppress evidence obtained through a search of his mother's residence on the grounds that officers used a false search warrant to trick his mother into providing written consent to the search. Although Movant is correct that his counsel did not raise this precise argument, his counsel did move to suppress the evidence obtained through the search.  The Court held an evidentiary hearing on May 24, 2010, and a continuation of the hearing on July 13, 2010.  Movant testified at the evidentiary hearing that he neither lived at his Mother's residence nor stayed there when visiting Detroit.  The Court noted that Movant had similarly denied living or staying at his mother's residence in a recorded statement to law enforcement officers.  The Court concluded that Movant

had no standing to challenge the search of his mother's residence, since he lacked a reasonable expectation of privacy there. *See, e.g.*, *United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006). Given this conclusion, Movant has failed to show that he was prejudiced by his counsel's failure to raise an additional challenge to the search.

## II.    Failure to move to suppress post-arrest statement on the grounds of unnecessary delay

Movant argues that his plea decision was influenced by the existence of incriminating post-arrest statements, which his counsel should have moved to suppress on the grounds of an unnecessary delay between his arrest and his probable cause hearing. Movant relies on the Supreme Court's rulings in *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957). However, the *McNabb-Mallory* doctrine, as modified by 18 U.S.C. § 3501, does not render voluntary incriminating statements inadmissible if they were made within six hours of arrest. *Corley v. United States*, 556 U.S. 303, 322 (2009).

The government asserts that Movant made his incriminating statements within six hours of arrest. According to Movant himself, he was arrested at approximately 7:15pm on February 2, 2010. The government asserts that Movant began making his incriminating statements approximately three hours and fifteen

6

minutes later, after executing a waiver of rights and a waiver of prompt appearance. Movant does not challenge this assertion in his Reply. Because Movant does not allege that he made his incriminating statements after more than six hours had passed since his arrest, he fails to explain why a motion to suppress the statements due to unreasonable delay would have been viable under *Corley*. This argument therefore fails.

## III.    Failure to move to suppress statement as involuntary

Movant argues that his counsel should have moved to suppress Movant's statement made during custodial interrogation because the officers exerted psychological pressures conveying a threat that if he did not confess, his mother would face criminal charges. Movant further argues that his counsel should have requested a professional evaluation of Movant's mental state to help determine whether his statement was voluntary.

Movant's counsel did, in fact, file a motion to suppress Movant's statement as involuntary in light of threats to bring criminal charges against Movant's mother. The Court held an evidentiary hearing on May 24, 2010, and a continuation of the hearing on July 13, 2010. The Court found, based on a recording of the interrogation, that it involved no threats against Movant's mother and that the nature of Movant's communication with the officers was inconsistent

with a fear of his mother facing criminal charges.  The Court did not order a professional evaluation of Movant's mental state.  However, Movant has cited no authority to support his assertion that "the Court was not in a position to evaluate" his mental state with respect to the voluntary nature of his recorded statement. Movant has provided no reason to believe that if his counsel had requested such an evaluation, the request would have been granted or would have affected the outcome of the proceedings.  Accordingly, this argument fails.

## IV.   Failure to challenge unconstitutional variance created by superseding indictment

The original indictment charged Movant and former co-defendant Howard Barkley with conspiracy to possess with intent to distribute controlled substances. The superseding indictment dropped the conspiracy charge against Barkley and added a conspiracy charge against co-defendant Alistair McGee.  Movant argues that his Fifth Amendment rights were violated by a "variance of facts between the original indictment and the superseding indictment."  His reasoning seems to be that because the conspiracy charge against Barkley was dropped, Barkley's statements concerning the scope of the conspiracy were inadmissible.  Movant argues that because Barkley's statements were inadmissible, he should not have been held accountable for 30 kilograms of cocaine or the possession of firearms.

Movant faults his counsel for allowing him to plead guilty to charges in the superseding indictment without raising challenges on these grounds.

The original indictment alleged that Movant and Barkley conspired "with each other and with other individuals, both known and unknown to the grand jury." This allegation is consistent with the superseding indictment's allegation that Movant and *McGee* conspired with each other and with other individuals. Both indictments are consistent with the evidence that Movant, Barkley, and McGee were co-conspirators; the only difference concerns which co-conspirators were charged. Movant has cited no authority holding that evidence from a co-conspirator regarding the scope of the conspiracy is inadmissible if the co-conspirator is not charged. Since Movant identifies no credible legal basis for his proposed challenge concerning a "variance," he has not shown that his counsel was ineffective for failing to raise it.

## V.     Failure to move to dismiss the indictment for violation of the Speedy Trial Act

Movant argues that his counsel should have moved to dismiss the indictment for violation of the Speedy Trial Act because he was not tried within 70 days after the filing of the indictment. The Speedy Trial Act provides that a defendant must be tried within 70 days after the later of the filing of the indictment or the defendant's original appearance before a judicial officer. 18 U.S.C. § 3161(c)(1).

9

If this requirement is violated, the indictment must be dismissed upon motion by the defendant, though the court may determine to dismiss the case with or without prejudice. *Id.* § 3162(a)(2). However, the statute excludes from the 70-day period any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* § 3161(h)(1)(D). It also excludes any "period of delay resulting from a continuance granted by any judge … on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A).

Here, no Speedy Trial Act violation occurred. The original indictment against Movant was filed on February 11, 2010. Twenty-eight days passed before the parties stipulated, on March 11, 2010, to a § 3161(h)(7)(A) continuance from that date until April 30, 2010. The Court entered the findings required for the continuance in an Order [21] dated March 26, 2010. That period of excludable delay expired on April 30, 2010. Eleven days then passed before Defendant filed several pretrial motions on May 11, 2010, initiating a period of excludable delay under § 3161(h)(1)(D). While these motions remained pending, Defendant filed the first of a second set of pretrial motions on July 20, 2010. The second set of motions had not been resolved—and, thus, the period of excludable delay had not

10

ended—by the date of Defendant's guilty plea.  Because fewer than 70 non-excludable days passed between the indictment and Defendant's guilty plea, Movant's counsel had no basis for moving to dismiss the indictment on the grounds of a Speedy Trial Act violation.

## VI.   Failure to inform Movant of his sentencing exposure

Movant argues that his counsel misled him about the consequences of his guilty plea by telling him that counsel "would be able to provide good law and argument that would allow him to be sentenced to … no more than 168 months." Specifically, Movant's counsel promised to argue that Movant could not be subject to a two-point firearm enhancement or held accountable for 30 kilograms of cocaine.  Counsel made good on this promise and raised legal arguments to this effect at sentencing, which the Court rejected.  The mere fact that the Court rejected Movant's sentencing arguments does not render his counsel ineffective for believing that those arguments might succeed or for sharing that belief with Movant.  Further, before accepting Movant's guilty plea at his plea hearing, the Court confirmed that Movant understood he was facing a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment.  The Court therefore finds no merit to Movant's claim that his counsel failed to apprise him of his sentencing exposure.

## VII.   Failure to negotiate a conditional plea preserving Movant's right   to appeal the denial of his motions to suppress

Movant argues that his counsel should have negotiated a Rule 11 conditional plea agreement preserving his right to appeal the Court's denial of his motions to suppress evidence.[2]   However, as explained in prior subsections of this Order, Movant has failed to identify any merit to the suppression arguments he faults his counsel for failing to preserve for appeal.   Movant therefore cannot show prejudice.

## VIII.  Failure to challenge drug quantity

Movant acknowledges that his counsel argued that Movant should not be held accountable for 30 kilograms of cocaine.  Indeed, his counsel raised several arguments to that effect.  Movant faults his counsel for failing to raise an additional argument on the basis that Movant committed his crime with others.  Movant's implication seems to be that each co-conspirator could not be held accountable for the total 30-kilogram quantity, which should have been somehow divided and distributed among the co-conspirators.  However, because Movant was sentenced for jointly undertaken criminal activity, his applicable base offense level was

---

[2] Movant attempted to appeal the Court's denial of his motion to suppress his post-arrest statement as involuntary.  The Sixth Circuit held Movant foreclosed from raising the issue on appeal because of his failure to enter a conditional plea. *McGee*, 510 F. App'x at 383–84.

12

properly determined by all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken activity. U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 (2010). Movant does not dispute that he believed the target of the conspiracy was 30 kilograms of cocaine or explain why his co-conspirators sharing that belief entitled him to be held accountable for a lesser quantity of cocaine. Movant has therefore failed to show that his counsel was deficient for failing to raise an additional argument along these lines.

## IX.    Failure to file petition for writ of certiorari

In passing, Movant mentions that neither his trial counsel nor his appellate counsel informed him that he could file a petition for a writ of certiorari to appeal the Sixth Circuit's rejection of his arguments on appeal. To the extent Movant offers this allegation as support for his ineffective assistance of counsel claim, the Court rejects it on the grounds that Movant was not constitutionally entitled to any assistance from counsel in filing a petition for writ of certiorari. *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009).

## CONCLUSION

For the reasons stated above, the Court denies Movant's motion to vacate, set aside, or correct his sentence. Movant's current 168-month sentence will remain intact. Further, Movant has failed to make a substantial showing of the

denial of a constitutional right.  Thus, the Court does not grant Movant a certificate of appealability.  *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Accordingly,

**IT IS ORDERED** that Movant's Motion for Extension of Time to Reply [151] is **GRANTED**.

**IT IS FURTHER ORDERED** that Movant's Motion to Vacate, Set Aside, or Correct Sentence [139] is **DENIED**.

**IT IS FURTHER ORDERED** that Movant is **DENIED** a certificate of appealability.

**SO ORDERED**.


s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: October 7, 2015          Senior United States District Judge

14